IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| LENZO GROOMS, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:13-cv-0255 |
| ) | Judge Campbell / Knowles |
| SHERIFF JOHN FOUSON and ) | |
| TINA SLAVEN, ) | |
| ) | |
| Defendants. ) | |

# REPORT AND RECOMMENDATION

This matter is before the Court upon a Motion for Summary Judgment filed by Defendant Tina Slaven, the only remaining Defendant in this action.[1] Docket No. 35. In support of her Motion, Defendant has contemporaneously filed a supporting Memorandum of Law (Docket No. 36), a Statement of Undisputed Material Facts (Docket No. 37), her Affidavit with Exhibits (Docket Nos. 39 - 39-5), and supplemental authorities (Docket No. 40).

Plaintiff has not responded to Defendant's Motion or Statement of Undisputed Material Facts, nor has he filed his own Statement of Undisputed Material Facts.

Plaintiff filed this pro se, in forma pauperis action pursuant to 42 U.S.C. § 1983, alleging in full as follows:

> 1. On February 8, 2013 at approx 5:00 a.m. I was arrested at home nude, not allowed to dress held in freezing temparture [*sic*] nude, out of doors, and in front of the female arresting + male arresting

---

[1] In an Order entered April 18, 2013, Judge Campbell terminated Sheriff John Fouson as a Defendant in this action. Docket No. 9. Also in that Order, Judge Campbell dismissed Plaintiff's official capacity claims against Defendant Slaven. *Id.* Accordingly, the only remaining claims in this action are Plaintiff's claims against Defendant Slaven in her individual capacity. *Id.*

officers nude. Would not allow me to dress for 30 or more minutes; crazy; due process. I live alone. Kept outside during search. 215 Oak St #D, Clarksville TN 37040

2. My living room is also my church + cult for Jamee worship, wall adorn with her photos + religious art + prose, which was partially removed in the household search, The [*sic*] seized non-related material of a religious nature, freedom of religion. The defendants/police are all agents of county + city, in this case as is sheriff.

3. The at least 10 officers were on the scence/scene non [*sic*] tried to stop me from being humiliated and put on public display like some kind of animal in the nude; equal protection. It wad [*sic*] very degrading.

4. It was cruel + unusual punishment, as well as inhumane treatment and forced indescent [*sic*] exposure by public officials. They simply refused to let me get dressed, unbelievable. The actors were all agents of the sheriff acting in the [*sic*] official capacities. Parading me abound [*sic*] nude, animalistic, degrading, dehumanizing!

5. I also allege racial profiling in this case. The search warrant was for sexual battery.

It was 4 or 5 o'clock a.m. of February 8, 2013 a Friday morning. I take Tramadol to help me sleep I was alsleep [*sic*] nude, awakened by what sounded like Thunder, The police breaking in my front door. Still in a haze I went to my front door to be confronted by machine guns, men yelling out incomprehensible loud sounds I was dazed. It was use of unnecessary and excessive use of force [*sic*] blinding lights in my face, yelling drop my walking stick, so I did. The building vibrated with the force to the door. If I had time, would have opened it.

Docket No. 1, p. 5-6.

In his Complaint, Plaintiff indicates that he did not "present[] these facts to the authorities who operate the detention facility" where he is housed because "[i]t would be futile," as he is "suing for money. damages [*sic*]." *Id.*, p. 3. Plaintiff seeks "$100,000.00 in damages; punitive +

property." *Id.*, p. 5.

Defendant filed the instant Motion and supporting materials arguing that she is entitled to summary judgment because:"1) [she] was not personally involved in the events allegedly giving rise to this suit; 2) [she] enjoys qualified immunity; 3) Heck v. Humphrey bars recovery; and 4) [Plaintiff] cannot prove necessary elements of his claims." Docket No. 36, p. 1.

For the reasons discussed below, the undersigned finds that there are no genuine issues as to any material fact and that Defendant is entitled to a judgment as a matter of law. Accordingly, the undersigned recommends that the instant Motion for Summary Judgment (Docket No. 35) be GRANTED.

## Undisputed Facts[2]

On February 8, 2013, Montgomery County General Sessions Judge Wayne C. Shelton issued three Arrest Warrants based on his finding that there was probable cause to believe that Plaintiff had committed assault, aggravated criminal trespass, and aggravated sexual battery of a nine-year-old female ("Jane Doe"). Docket No. 39, Affidavit of Tina Slaven ("Def. Aff."), ¶ 2; Docket No. 39-1, certified true copies of the Arrest Warrants ("Arrest Warrants"). Judge Shelton also issued a Search Warrant for Plaintiff's residence located at 215 Oak. St., Apt. D, Clarksville, Tennessee, 37042. Def. Aff., ¶ 2; Docket No. 39-2, certified true copy of the Search Warrant ("Search Warrant").

Later that morning, after Judge Shelton had issued the Arrest Warrants and the Search Warrant, Defendant attended a pre-arrest briefing with various officers of the Clarksville Police

---

[2] Unless otherwise noted, the following facts are in a form required by Fed. R. Civ. P. 56, and are undisputed.

Department ("CPD") and members of CPD's Tactical Unit ("TACT Team) regarding the apprehension of Plaintiff. Def. Aff., ¶ 3.

At all times relevant to the case at bar, Defendant served as a Detective for CPD's Special Operations Unit for Crimes Against Children. *Id.* Plaintiff is not a member of the TACT Team, nor does she possess any authority over it. *Id.*

During the pre-arrest briefing, the attendees received information concerning the factual basis for the Arrest Warrants, Plaintiff's criminal history, and intelligence relating to Plaintiff and to his residence. *Id.*, ¶ 4. Plaintiff's arrest presented a "high-risk" scenario because his criminal background included homicide and robbery convictions, and because he was known to carry (or have near his person) a machete and other deadly weapons, even when inside his residences. *Id.* Plaintiff's arrest was also "high-risk" not only to the law enforcement officers, but to children who Defendant believed could be present within the residence. *Id.*

The TACT Team, which consists of specially trained officers, responds to emergencies, such as hostage scenarios, suicidal subjects, and "high-risk" warrant executions, including the arrest of dangerous convicted felons. *Id.*, ¶ 5. The execution of Plaintiff's Arrest Warrant was the exclusive responsibility of the TACT Team. *Id.*

At the February 8, 2013 pre-arrest briefing, the Assault Team Commander of the TACT Team identified and explained the specific methods and tactics the Team had devised and would implement during Plaintiff's arrest. *Id.* After the pre-arrest briefing, shortly before 6:00 a.m. on February 8, 2013, Defendant traveled with some CPD officers, along with 15 members of the TACT Team, to Plaintiff's residence. *Id.*, ¶ 6.

Upon arriving at Plaintiff's residence, Defendant took a position at an exterior side of the

building, because the initial approach of, as well as penetration into, the main and only entry was the TACT Team's exclusive responsibility. *Id.*, ¶ 7. From her position, Defendant could observe and hear the TACT Team's activities and commands, but she did not authorize, supervise, encourage, or participate in the TACT Team's activities or commands, nor did she have the ability, permission, or authority to do so. *Id.*

After all law enforcement personnel took their positions, the TACT Team Commander knocked on the front door of Plaintiff's residence and gave loud vocal announcements. *Id.*, ¶ 8. The TACT Team Commander repeated those announcements loudly. *Id.* After several seconds, and having received no response, the TACT Team Commander gave the order to breach the front door to the residence. *Id.*

After a TACT Team officer breached the door, Plaintiff immediately appeared and stepped from inside the residence completely nude with his hands raised. *Id.*, ¶ 9. After receiving commands from the TACT Team to do so, Plaintiff walked out of the residence and down the front steps. *Id.* The TACT Team then placed Plaintiff in the front yard where two male CPD officers over whom Defendant has no authority, supervision, or control, handcuffed Plaintiff and took him into custody. *Id.*

With Plaintiff in custody, the TACT Team Commander gave additional loud vocal announcements to establish whether other persons were present within the residence and to provide them with an opportunity to exit prior to the TACT Team entering. *Id.*, ¶ 10. Receiving no response to the additional announcements, members of the TACT Team entered the residence to sweep and secure the interior. *Id.*

While some members of the TACT Team were sweeping and securing the interior, other

members of the TACT Team brought out a blanket, and Plaintiff covered himself with it while he remained in custody in the front yard of the residence. *Id.* Pursuant to TACT Team protocol, and for the safety of officers and Plaintiff, the TACT Team forbade any attempt to return Plaintiff to inside the residence until the TACT Team had completed its sweep and secure process. *Id.*, ¶ 13. The TACT Team completed its sweep and securing of the premises within approximately 10 minutes after they and the other officers had arrived at the scene. *Id.*, ¶ 12. At the earliest opportunity after the TACT Team completed the sweep and secure process, the male CPD officers - upon the TACT Team's instruction - brought Plaintiff back inside the residence where he sat on a couch the TACT Team had secured. *Id.*, ¶ 13. Moments later, the TACT Team withdrew from inside the residence and the TACT Team Commander called for Defendant to enter. *Id.* When Defendant entered the residence, Plaintiff was, with assistance from law enforcement officers who had gathered clothing, in the process of getting fully dressed, and he remained covered with the blanket the TACT Team had provided during that time. *Id.* At that time, Plaintiff and Defendant greeted one another. *Id.* This greeting was the first interaction or contact of any sort that Defendant had with Plaintiff since she had arrived at the scene. *Id.*

While inside Plaintiff's residence, Defendant observed a shrine, including a make-shift throne, devoted to Jane Doe. *Id.*, ¶ 16. Defendant also observed a number of weapons, including knives and machetes, which were in plain view and easily accessible to Plaintiff while he was inside. *Id.*

From the moment the law enforcement officers arrived at Plaintiff's residence until the moment the TACT Team withdrew and called for Defendant to enter the residence, Defendant had no personal involvement, participation, or responsibilities concerning the execution of the

6

Warrants against Plaintiff, nor did Defendant have any personal involvement, participation, or responsibilities concerning the manner in which arresting officers knocked and announced prior to entering Plaintiff's residence, or the length of time and/or manner in which the officers detained him outside his residence immediately following his arrest. *Id.*, ¶¶ 14, 15. At all times relevant to the case at bar, Defendant conducted herself in a reasonable, prudent manner and in accordance with all applicable law enforcement standards. *Id.*, ¶ 18.

Plaintiff has not alleged, nor did he suffer, any physical injury as a result of his arrest. *Id.*, ¶ 15.

On February 8, 2013, the temperature remained above freezing during the entire day in Clarksville, Tennessee. *Id.*, ¶ 11; Docket No. 39-3, certified true copy of the Climatological Observations of the United States Department of Commerce, National Oceanic & Atmospheric Administration, based on data from the Clarksville, Tennessee weather station. The high temperature that day was 54 degrees Fahrenheit and the low temperature was 33 degrees Fahrenheit. *Id.*

On May 6, 2013, a Grand Jury returned an Indictment against Plaintiff for assault, aggravated criminal trespass, and aggravated sexual battery. *Id.*, ¶ 17; Docket No. 39-4, certified true copy of the True Bill. On May 27, 2013, Plaintiff plead guilty to the aggravated sexual battery of Jane Doe. *Id.*; Docket No. 39-5, certified true copy of the Montgomery County Circuit Court Judgment, Case No. 41300525.

### III. Analysis

#### A. Local Rules 7.01(b) and 56.01(c) and (g)

Local Rule 7.01(b) states, in pertinent part:

> Each party opposing a motion shall serve and file a response, memorandum, affidavits, and other responsive material not later than fourteen (14) days after service of the motion, except, that in cases of a motion for summary judgment, that time shall be twenty-one (21) days after the service of the motion, unless otherwise ordered by the Court. Failure to file a timely response shall indicate that there is no opposition to the motion.

Defendant filed the pending Motion on November 21, 2014. Docket No. 35. Plaintiff has failed to respond to the instant Motion.

Additionally, with respect to Motions for Summary Judgment specifically, Local Rules 56.01(c) and (g) state, in pertinent part:

> c. Any party opposing the motion for summary judgment must respond to each fact set forth by the movant ...
>
> . . .
>
> g. Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these Rules shall indicate that the asserted facts are not disputed for the purposes of summary judgment.

Plaintiff has failed to respond to Defendant's Statement of Undisputed Material Facts. Pursuant to Local Rule 56.01(g), Plaintiff's failure to respond indicates "that the asserted facts are not disputed for the purposes of summary judgment." Accordingly, there are no genuine issues as to any material fact and all that remains to be determined is whether Defendant is entitled to a judgment as a matter of law.

**B. Summary Judgment Standards**

It would be inappropriate to grant Defendant's Motion solely on the ground that Plaintiff has failed to respond. *See Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir. 1998). As the Sixth Circuit has stated:

> [A] district court cannot grant summary judgment in favor of the movant simply because the adverse party has not responded. The Court is required, at a minimum, to examine the movant's Motion for Summary Judgment to ensure that he has discharged [his initial] burden ... The federal rules require that the party filing a Motion for Summary Judgment "always bears the burden of demonstrating the absence of a genuine issue as to a material fact."

*Id.* (citations omitted). The Court will, therefore, consider whether Defendant has met her burden under the appropriate summary judgment standards discussed below.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party,

however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

## C. 42 U.S.C. § 1983

Plaintiff alleges violations of his First and Fourth Amendment rights pursuant to 42 U.S.C. § 1983. *See* Docket No. 1. Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988)*, citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct. 1908, 1913, 68 L. Ed. 2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978). The traditional definition of

acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, 108 S. Ct. 2255, *quoting United States v. Classic,* 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

## D. The Case at Bar

As has been noted, the only remaining claims in this action are Plaintiff's individual capacity claims against Defendant. In order to defeat Defendant's properly supported Motion for Summary Judgment, Plaintiff must present affirmative evidence that Defendant violated his rights; conclusory allegations are not enough. *See Street,* 886 F.2d at 1479. *See also, Anderson,* 477 U.S. at 257; *Nix v. O'Malley,* 160 F.3d 343, 347 (6th Cir. 1998); *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed. 2d 695 (1990); *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir. 1990). Plaintiff must demonstrate that Defendant either directly participated in the activity, or personally authorized, approved, or acquiesced in the activity that allegedly violated his rights. *Hays v. Jefferson County*, 668 F.2d 869 (6th Cir. 1980).

It is undisputed that, from the moment the law enforcement officers arrived at Plaintiff's residence until the moment the TACT Team withdrew and called for Defendant to enter the residence, Defendant had no personal involvement, participation, or responsibilities concerning the execution of the Warrants against Plaintiff, nor did Defendant have any personal involvement, participation, or responsibilities concerning the manner in which arresting officers knocked and announced prior to entering Plaintiff's residence, or the length of time and/or manner in which the officers detained him outside his residence immediately following his arrest.

11

Def. Aff., ¶¶ 14, 15. Accordingly, Plaintiff cannot demonstrate that Defendant either directly participated in the activity, or personally authorized, approved, or acquiesced in the activity that allegedly violated his rights. *Hays v. Jefferson County*, 668 F.2d 869 (6th Cir. 1980). Absent such, Plaintiff cannot sustain his individual capacity claims against Defendant.

### IV. Conclusion

For the foregoing reasons, the undersigned concludes that, viewing all the facts and inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and Defendant is entitled to a judgment as a matter of law. The undersigned therefore recommends that Defendant's Motion for Summary Judgment (Docket No. 35) be GRANTED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge